Adam Clark, would you call the case please? 16-0780, The Travelers Indemnity Company v. Rogers Cartage Company. Thank you. Would counsel who are going to argue please approach the bench, identify yourselves and let us know how much time you would like for your argument. Your Honor. Donna Babornik for Travelers and I think 15 minutes. Very well. And then I'd like to reserve a little bit of time at the end for... Sure. Your Honor, Joe Nassif of the Nassif Law Firm and I'm here on behalf of Rogers Cartage and I'm fine with 15 minutes. Very well. All right, now the microphone in front of you is for recording purposes, not for amplification. So if you want to be heard by everyone in the courtroom, please keep your voice up. Okay? Yes. All right, this is for Babornik. Excuse me. May it please the Court, my name is Donna Babornik and I represent the plaintiff insurers in this case, The Travelers Companies. The entire premise of Rogers Cartage's argument in this case is based on conjecture. That because Travelers issued a policy to Rogers in one year, it must have issued the same policy to Rogers in the years before or the years after. Other than prior or subsequent policies, there are no documents that provide evidence of the terms and conditions of the missing policy years. In the case of the CGLs, there are no documents that even indicate any policies were issued by Travelers at all. Rogers relies nearly exclusively on the so-called bookend or sandwich approach in seeking this Court's affirmance of the ruling below. But Rogers stretches the bookend approach in cases that enlist it to the breaking point. No case in any jurisdiction, let alone Illinois, holds that a court can divine from the existence and the terms and conditions of policies simply from the existence of other policies in other years with little else. Yet that is the extraordinary precedent that Rogers seeks here and which this Court should reject. If the trial court is affirmed here, then parties will be able to prove the existence of entire contracts based on little more evidence than the existence of other contracts in other years. If the Court would like, I will first address Rogers' claim that there were... Are you presenting secondary evidence that there was no insurance contract in that year? No, certainly they're not precluded, but the burden clearly falls upon the insured to... There's been a debate with respect to the standard, but we've come to agreement that it's by the preponderance of evidence to prove both those two things, both existence and terms and conditions. Those are separate hurdles with respect to each policy. But isn't it possible for the burden to shift if they establish a prima facie case that I did have a... You would think I had an insurance policy during these years because I had insurance policies for 30 other years? Well, if you've got the preponderance of evidence standard, okay, so they put in evidence and we can put in evidence. And then it's a question of weighing of the preponderance, if they've met their necessity of meeting the preponderance of the evidence. Following up on Justice Pierce's question, was there any evidence that you put in to suggest that during this gap period there wasn't a policy? There was a discovery done across the board and the parties together put in what they were agreed were the minimal pieces of potentially secondary evidence that could support any sort of finding. The parties agreed there was no factual dispute. It was a weighing and interpretation of those particular items. It's notable the things that are missing, okay? So I think you have to also consider that. You obviously can't prove a negative the way you can prove a positive. So certainly I couldn't find a memo that says, you know what, there was no policy issued this year. But likewise, there was nothing found that said there was. So where does that leave us? You took discovery from them, which could have, I assume, disclosed documents that they had some other insurance in place during that period. There was nothing like that. We did all kinds of discovery in that respect of them and they of us. They didn't find policies. They didn't find our policies and they didn't find any other policies. We wouldn't have the policies of others within our bodies because we were primary. But you took discovery from them. What weight would you give the fact that the subsequent policies were marked renewal? You know, with respect to the, let's talk about the general. Renewal policy. I understand. That presupposes that there was a proceeding. Well. Doesn't it? It assumes there was at one time, I would say in all likelihood, a policy issued before that if you've got a renewal. There probably was a previous policy. But just because it's a renewal doesn't mean that the terms and conditions are the same. Things can change. You can have a renewal, but upon renewal you make some modifications to the actual coverage. So I think it speaks to the existence. But it doesn't speak to the terms and conditions. Absent additional information about what the terms and conditions could be. It speaks to the existence. Right. More than likely there was a policy during this blank period. When you have that sort of renewal marking. And that's why with respect to the period of time where there are the missing commercial general liability policies as distinguished from the auto. On the commercial general liability line, there's a series of missing policies. And there's what we call the bookends. The bookend has a renewal indication. It's difficult to read. It's difficult to make out even a full policy number. But there's clearly something in the box. And on that basis we conceded. Who makes that note that it's a renewal? Either the insurance company or the broker. Was it the insurer or was it Travis? It's either the broker or the insurance company. Yes. But Your Honor, the point I'd like to make is we conceded the existence. Existence of the policy that is referenced by that renewal. In the space of the missing policies. We conceded the existence. But that doesn't speak to the other years for which there is no indication that that was a renewal. There's nothing. There's only the bookends. If the court would like, I'll address the Rogers claim that this court's review here is against the manifest weight of the evidence rather than de novo. Or I can skip straight to the merits. Merits? Okay. In this appeal, Rogers is claiming that there is enough secondary evidence in the record to prove both the existence and the terms and conditions of a series of commercial general liability lines. And automobile policies that travelers allegedly issued to Rogers in the 1960s. I'll address the CGL and the auto policy separately starting with the CGL. Rogers claims that travelers issued four CGL policies to Rogers. One for each of 1961 to 1964. Rogers' burden is too pronged to prove both those policies existed and their terms and conditions. The standard of proof which is undisputed is preponderance of the evidence. As reflected in travelers' briefs, Rogers has not met its burden of proving the existence of the 1961 through 1963 CGL policies. Travelers concedes there is evidence that a CGL policy was issued in 1964 because the existing 1965 policy states that it is a renewal of coverage. Though it does not specify on what terms. Regarding for the alleged 1961 through 1963 policies, Rogers relies on a single piece of evidence to show the policies existed. Single piece. A coverage letter written in 2000 by travelers' employee, Hal Coplin, nearly 40 years after the policies were allegedly issued. That letter stated in a footnote that travelers may have issued policies to Rogers in those years. Tracing back the genesis of Mr. Coplin's May footnote, it is uncontested that the basis of his statement was certain records maintained by travelers known as Traveler's Commercial Account and Claims Records. Those records show a single traveler's policy number for Rogers and a single 20-year policy period from 1950 to 1969. The record site for that is A448. The uncontested evidence is that the single policy number with a 20-year period was a vestige of a legacy computer system at Travelers. You just don't have 20-year policies. The 20-year period was entered because the policy term was unknown. It was a placekeeper. It was not evidence that any policies were issued in that period. Why would they put in a placemaker number if they didn't have a policy? Because they got claims and they got claims to pay to defend. These are the environmental claims. When they got those environmental claims, they had the bookend policies. They did not have policies that were missing. But out of caution, they responded by that letter that they would defend because the duty to defend is a broad one in Illinois, under any potential policies. Whenever they get a claim, they need some way to put it into the system. And the testimony of the deposition was that they put an entry into the system at some point. Now, this is testimony for, you know, 50, 60 years later. But they put it, not that many, but many years later. They put an entry into the system just to hold open a space to get into the system to pay claims. So, while the trial court relied on Mr. Copland's letter as evidence of existence of policies issued from 61 to 63, that as a matter of logic must be error. Why? Because Mr. Copland's uncontested testimony is that the only basis for his statement that travelers may have issued policies in the 61 to 63 period was that very commercial accountant claims record that the trial court rejected. Evidence that itself is not competent to prove the existence of policies standing alone cannot be transformed into evidence of the existence of policies simply because Mr. Copland made note of it in a letter. To allow otherwise would undermine sort of the principles of garbage in, garbage out. There's just no foundation to that letter apart from the evidence that the trial court already rejected. Mr. Copland's letter must also be read in its context. It was sent at the outside of the underlying environmental claims for which Rogers sought coverage from travelers. Mr. Copland's letter stated that travelers would provide Rogers a defense to the environmental claims and otherwise reserved travelers' rights. Mr. Copland was not making any determinations at the time regarding the existing of any missing policies. And, whether those 1961 to 1963 policies existed or not, travelers had defense obligations to Rogers separate and apart from any alleged missing policies. As the court is aware, Illinois law requires insurers to be conservative when addressing their duty to defend obligations to their insurers. That was what travelers was doing by Mr. Copland's letter. Mr. Copland's statement made in a reservation of rights letter that policies may exist is not proof that the policies more likely than not existed. Especially considering that the source of his statement was evidence that the trial court agreed was not evidence. This question should end here and the trial court should be reversed with respect to the existence of the CGR policies. Eliminating the necessity, obviously, of considering the question of terms and conditions. But it was the bookends as well as the letter. I mean, the bookends and you are going to address that. Absolutely. Because we see the problems that you're pointing out with the letter itself. But bookends enough. I mean, I would certainly address that in the context of the terms and conditions. But even with respect to existence, if just by virtue of the fact that a company has a policy in one year, then there's a gap and then there's a policy in another that can't possibly get you to meet the standard, the burden of proof. Why is that not? Because there's many, many, many occasions where insurance companies issue a policy. The policy holder becomes uncomfortable with the premium or with the coverage or something like that. Is there evidence of these many occasions or this practice? Is there evidence in the record? Well, there was no evidence in the record to the contrary. And there was certainly no evidence that, you know, X percentage of the time, if a company issues one policy, they also, in this one, they also issued what's in between. That's just purely conjecture and speculation on either side. And conjecture can't be the basis of a proof, even with preponderance of the evidence. It can't be alone. I think what Justice Mikva is saying is if the plaintiff's position is, I had insurance all the way up for many years up to point A. Then from point A to point B, I can't find my insurance policies, but I think I had them. And then from point B, for many, many years forward, I had insurance policies with the same company and I'm saying for the same terms and everything else. Now, if you're saying it's a preponderance of the evidence, if that's my case or the plaintiff's case, is the insurance company off the hook if they stand mute and say that's not enough and they're decided to be wrong? Or should the insurance company come forward with some evidence and say we know this company, we've been dealing with them for years, some years we were able to do it, some years we weren't, the premiums were too high, they decided not to do it, or what? Well, I guess I wouldn't use the same characterization that you started with, that the insurance company is off the hook. Because to me, it's entirely conceivable that there was no insurance during that time. But should there be evidence that it's conceivable that there wasn't? You don't need to prove a negative. No, I don't believe you need to prove a negative. Because if I had to prove a negative, that means they haven't proved it. It's their burden in the first instance. And I don't think, well, there's certainly no case anywhere in the country that says bookends alone are enough. No case. Is there a case that says bookends alone are not enough? Because I did not read any of your cases. No case says bookends alone are not enough. But by reading Coltec, which happens to be the only case in Illinois, it's a federal case, but it's the only case applying Illinois law, you can see the type of additional stuff that's necessary to be wedded to the bookends to prove that the policies existed. It's things like contemporaneous... Can you just tell me there's no dispute they existed? No, no, one of the policies. There's a period of missing time. The one that we're not disputing the existence of is the last missing policy because the policy that we have is an indication that it's a renewal of that policy. So there we have something beyond just a bookend with respect to that policy. But for the other policies walking back to this other bookend, there's nothing. There's only this letter that I was describing where the claim handler talks about maybe there's policies based on... Any evidence of what? I'm sorry. Payment. Payment? Did you call up your treasurer and say, did we ever get paid PCS? We did a very thorough look throughout the company as the company does when it's presented with a question of coverage. Do policies exist? But beyond that, the burden is not on me to discover myself, okay? To do the discovery of my own client. I would think Travers would want to know whether or not they ever received premium payments. These are policies back in the 1960s. The records retention policies, I can't imagine, would contemplate saving payment information with respect to premiums paid in the 1960s. I'm speculating a little bit, but certainly there was no discovery on that point. And again, there's nothing in the record on it. I don't think we can create things in the record that weren't pursued by my opposing counsel. It's their burden. Time? Okay, thank you. Well, if you want anything else you want to touch on? You know, our procedures here do give you a limited amount of time. We try to accommodate everybody. Okay, I would just urge that with respect to the CGL policies, you very much focus on the Coltec case. Because even though it's a situation where they found coverage in that case, the circumstances under which they find it are so hugely different than the circumstances here where we have virtually nothing. We have nothing contemporaneous. We have no lists that were kept, you know, someone's ledger where they, at the time of the policies, kept a list. We have nothing like that. Even if we had the bookends, we have no indication about what the limits would be. We don't, you know, they could, there are often times when limits go up, limits go down. There's nothing like that. So is it fair to arbitrarily decide that there's going to be X amount, there are going to be policies there, and then we're going to say that they have, they provide this amount of coverage? We don't have excess policies here that have been proven in any way. So where do you cut it off? I mean, it's entirely conjecture. And that's what I wanted to point out. With respect to the auto policies, where we have admitted the existence of the auto policies, existence, again, it's this two-pronged question. The problem with the auto policies is there's hundreds of versions of auto policies. There were hundreds of policies issued to Rogers Carthage. They're all very particular. Some are for certain types of vehicles. Some are for certain locations. Some are for liability. Some are not for liability. There's any number of variables. What are the differences looking at the two bookends, the two closest bookends of the automobile? What are the biggest differences, most material differences between them? Well, for one thing, they only took one bookend. And there's not both. Well, let me interrupt that thought. That one bookend, would that one bookend policy provide coverage for the underlying liability? That's another whole different story because this is a very unusual set of claims with respect to auto coverage at all. Would that policy provide coverage in the instance of a traditional auto accident or something like that? Perhaps. Here... So, Judge Flynn held that there are policies in existence and the terms of those policies match the bookends. The bookend, yeah. You are now going to, if that judgment stands, you are now going to take that finding and go down to southern Illinois and argue like crazy that the policy he found existed... Doesn't matter. Doesn't matter. Exactly right. Okay. So, is the policy he found existed, does it matter? Does it matter? As far as your indemnification application. Well, of course, I've still got an argument to make in southern Illinois and I wouldn't do a lay down on another aspect of the case that I find to be completely on our side. Because it gets to, I think, what Justice Mikva is focusing on, as I am and I'm sure Justice Harris. There may be a variety of different policies of insurance for automobiles or transportation vehicles. Right? True. So, is the policy that Judge Flynn found to have existed and those terms exist, does it apply to the underlying liability that Rogers is seeking indemnification? I can go back to the same answer, which is no, but it's even a little bit different with respect to auto policies. Because auto policies, you know, typically respond to a particular accident in a particular time, right? These claims relate to damage that spanned potentially a long period of time. They're long tail claims. So, does that particular policy that exists, the bookends, does it apply to property damage that occurred somewhere over here? No. But if you took those same terms, would it apply? You're missing my point. If Judge Flynn said that the policies existed and they were the bookend policies, did he find that those bookend policies were for only owner-operated automobiles as opposed to a different form of automobile policy that may deal with the discharge of pollutants into a site? What you'll see is that he really didn't make any detailed findings at all with respect to the terms. He just said he would take that singular bookend and assume it for the balance of the period. So, doesn't that identify the terms of the policy that existed for this gap period in leaving it to you lawyers to go down to southern Illinois and drive some judge down there crazy about whether coverage exists or not? Well, Judge, respectfully, I mean... No. No. In that, it fabricates terms. It doesn't, from my perspective, correctly identify what the terms truly are. Sure, it gives us a working format, but it's not based on the law. That's my position, that you have to prove the policies. You can't just assume it. You can't just, without evidence of the terms and conditions, say, because the terms and conditions were this and this year, they must have been the same before that. Okay. Thank you very much. Thank you. Mr. Nassif? Thank you. Judge, could I answer the question you asked, yes or no? Say whatever you like. Yes. That's the answer. What was my question? I can't remember your question. The question you answered is, didn't the judge basically say, define what the policy was, sufficient for a judge down in southern Illinois to go crazy over the idea that we're going to ask for coverage under that policy. So your position is that Judge Flynn found that the 1961 policy, the terms and conditions of that policy, applied through 1970, approximately. Yes, and Judge, in addition to that 1961 policy, there were traveler's memorandums regarding the terms and conditions of those years between 61 and 70. And those terms and conditions never changed for the policies we're talking about, Judge, the applicable policies here. There were other years after 1970 where the terms and conditions could change. But we had more evidence than just the 61 policy. And Judge Flynn very carefully went through all the evidence and weighed it. And frankly, he did the same thing for the CTL policies. The important thing on the CTL policies, we're only missing three now. And there were policies from 1959 to 1986. And Mr. Copland in his letter says we're looking at these claims for policies going back to 1961 to 1986. So there was this history here that goes well beyond just that base time period. And this Court is already aware of what happened with, you've probably had multiple or heard of multiple insurance lawsuits having to do with environmental contamination. It is through these cases that have been cited, the majority of them either have asbestos issues or they have environmental contamination issues that were cited in our briefs. Not sure why the auto policies are relevant, but I don't think that's our concern. And be thankful that a judge down in southern Illinois is going to decide the relevance. But keep in mind that these were trucks that were dumping the material. This is a trucking company. And so I have a burden I'm going to have to carry when I go back to Belleville. The point I'm trying to make with you all, imagine this. You're the guy who's in charge of environmental claims. And environmental claims coming into your insurance company are cancer. They've been coming in in droves. And it's August 30, 2000 and you're Mr. Copland. And that's your job, managing environmental claims. So you get into this situation where he's looking at a year of missing policies. I've got to ask you a question. I mean, I just have to say this. Do you think based on your knowledge of insurance companies, based on all the cases you've had involving insurance companies, that he's going to come up and say we're going to include the policies from 61 to 67 even though we can't find them? That's what he does. And his boss, that gave an affidavit, Mr. Harris, they have a special liability coverage unit that covers environmental claims alone. So they've got a guy there who's a second vice president who oversees those environmental claims who probably is the person that Mr. Copland reports to. So do you think he's going to do something that jeopardizes his position? The secondary evidence he found we didn't get that. Rogers sent multiple letters after Copland's letter to Travers saying tell us what the secondary evidence is. While Mr. Copland was still employed, now years after he wasn't employed with Travers, I took his deposition. We got two different answers on what the secondary evidence was. Not from him. We got one from Travers in response to Discovery saying, oh, well, that was the finding of the 66 and 67 policies. We found the policies. It wasn't like they weren't there. It's just that they didn't find them. Which goes to the issue of did we shift the burden? Absolutely. Absolutely. So for the CGL policies, we got one here, we got one there, and there's other evidence. And it's in Judge Flynn's opinion. In fact, what he does is he takes the evidence of these other policies and he compares it to the Coltec case. We had bookend policies and the difference in CGL is like three years. Three years difference. And they were all renewal policies. The ones that we found were renewal policies. There's no evidence that they put forward. Now there's other evidence that the terms and conditions didn't change because there were specimen policies that Travelers had. They're foreign policies for those years. We compared them to the 61 policy and then we turned around and compared it to the other 61 policy. Those specimens had the same material terms as the 61 policy and the 65-66 policy. And those specimens, we had specimens for 62, 63, and 64. So this is, and that's why Judge Flynn ruled in our favor. And I have to say, I've had the honor of arguing multiple cases in front of Judge Flynn on this case alone, but multiple issues in front of him. He is without question one of the most thorough jurists I've ever been in front of. And he did that in this opinion. And that's what you all are asking your questions about because you see the issues here. We agree with you, I think, about Judge Flynn, but not sure, I'd like to ask you about your suggestion that we defer to him as though he had made some credibility findings when, in fact, I think everybody agrees purely a documentary case. And I believe our review is de novo a documentary case. And you argue that it should be more deferential than that. I do argue that. And I look through Section 735, Section 2-1110, and I say, I look at the cases, the Gurney case, I look at the Kraus case, I look at the Supreme Court decision in Coquinas versus Katcher in 1980 where it threw the prior case, the 1967 case, threw it out the window, I look at what Judge Flynn said in his document. He said, it's not a jury trial. I'm going to rule on all the evidence. I'm not going to just look at a prima facie case. I'm going to rule on all the evidence. I'm going to look at and he cites Section 2-1110. He cites it in his. It doesn't matter, I don't think. I don't know all the cases you just reeled off, but the ones you cited in your brief all dealt with cases where there had been testimony. And there was no testimony here that I'm aware of. I think you're right that Judge Flynn did it like a stipulated bench trial. I don't think either of your questions is right to do that. You both agreed that that was appropriate. But whether it had been a trial or whatever it was, it's not a good idea to disagree with a judge. I'm inviting you to. I'm just saying is there a case that suggests that even when it's all documents we're supposed to defer? Oh yes. And in what case do you rely on it? I'll give you the cites. The case I relied on is Evans v. Gurney, which is actually in the 1994 First District case that was decided. I mentioned Cross v. Pekin Life Insurance, which is again another First District 1990 case. That says exactly what I'm saying to you today. And there was testimony, Your Honor. There was testimony. It was by deposition. And he did consider the deposition testimony. But everybody agreed that it would not be tacked or questioned the deposition testimony, right? Precisely, Judge. And I didn't even take Harris's deposition and I still agree I wasn't going to challenge Harris's testimony. Right. So it is basically reading documents and formulating a conclusion based on the evidence that testified in front of him. And I didn't get up and cross examine the witness. And so from my standpoint, I don't see a difference. Okay. Why don't you touch on your other issues? So the other case I would cite to you is Coquinas v. Coquinas,  the case that was judged that you were concerned about on your de novo review. That's what Coquinas addressed, what the factors were. If there had been a finding of no prima facie case had been established by the plaintiff, I'd agree that you're concerned about the fact that that's the way our police read when we first filed them. This was a cross-directed verdict. And that's what Section 2011 says. That's exactly right. That's exactly right. We're all on the same page. We know what happened. We know what    page. We're all on the same page. In addition, if you have any other questions about the additional auto policies or additional information on the CTLs, I'd be glad to go through it. Keep in mind, Judge Flynn took the COLTECH documents that they had available for that finding and he compared them with our situation. But the one thing I would tell you is Judge Flynn was careful about not leaving a loophole so that parties could slide on what we had agreed to. And he said in our discussion, because it was raised with him, that what if we find other evidence? What if some other evidence comes up? He sat there and he said to Travers Counsel, you're trying to basically get both ends here. And the question then came down, but I'm going to throw you a ball, is what he said. Curveball. And so my point is that there's a waiver issue here, in my estimation. We agreed to a process. We agreed that a bench trial would not have any difference. So I don't see where you get to a point where you can say that this wasn't as close to having a trial, your Honor, in response to your de novo review as you could have possibly had and both sides got a clear weighing of the evidence which is in Judge Flynn's opinion. Q. Before you leave, let me ask you a question. Rogers ultimately settled all these environmental claims for $9 million, correct? A. No, you mean the environmental claim involving these policies? Q. Yes. A. Because there were multiple environmental claims. The one they settled involving these was $1.5 million for this site that's covered by these policies. They settled another claim with travelers for $7.5 million. Q. Okay. So the policies that are missing, the GAP policies, what is Rogers looking for? A. The $1.5 million they paid to Conoco to resolve the environmental contamination. Q. So you're looking for that money out of these missing policies? A. Well, there's one non-missing policy, but that's        that's the $1.5 million. A. Yes. Q. So you're looking for indemnification out of these policies? A. Yes. Q. And that's to be resolved by the judge in the southern Illinois? A. Yes. He resolved that issue for another site against involving travelers, and this would be a second site that's just two blocks down the road from the first site. Q. Okay. All right. Thank you. Anything further? A. Thank you. Q. Thank you. Ms. Verbonak, briefly. Q. With respect to the de novo versus manifest weight issue, I would urge you to look at the Donata Square case. It's a second district case, but it couldn't be any more on all fours with our situation    type trial. And, in fact, it does turn on things like the non-missing policy. A. Yes. Q. And that's the  point. A. You're not disputing that this was, in essence, a stipulated bench and you agreed to that. Q. We agreed to it, yes. We agreed to it, but we didn't agree to change what the standard of review would be, nor would we. So it couldn't be a waiver, so to speak. A. I just wanted to correct something that might have been sort of confused with respect to the presentation. Travelers did not get numbers, policy numbers, for the missing CGL policies from Rogers Carthage or from Mr. Nassif or his team. That was with respect to policies that were actually located. I want that to be clear. We didn't have policy numbers. Q. You didn't have policy numbers, but you located missing policies that had numbers on them? A. There were some that were previously missing, and when we found numbers, that was what allowed us to actually locate them. For a subset of which are now not the policies that are in front of you, that was a different incident in the course of the litigation between the parties. And I wanted to go to the auto policy again because I wanted to emphasize that with the auto, we don't even have bookends. We have bookend, not plural. It's 1960 only. And that 1960 policy was not even part of the record in this case. You won't find it. So the questions I was being asked about, well, if you  and you assumed it was the same for all the missing auto years, would it cover, wouldn't it cover? That's not even an exercise in the record. That's not an exercise that was considered. Judge Flynn didn't enter into that. He didn't even look at the 1960 policy that is now posited as, you know, the missing terms. It's a problematic aspect of this case, and the case should be reversed on that basis alone. The 1960 policy you're saying was never even  record? Correct. Never marked as an exhibit? Never made part of the record? It's not part of the summary judgment record. Okay. Well, the summary judgment was never recorded. And the other point related to that is we were talking about how there are various types of auto policies, far more types of auto policies than even liability policies, and even during the period of time from 1966 to 1971, there are five known auto policies.   there were overlapping auto policies for the same year because the auto policies are so specific that you could have more, they had more than one auto policy. And the other point related to that is there were more than one auto policy in the same year. There were five known auto policies between 1966 and 1971 that didn't even offer liability coverage at all. You know, it was only first party. And I raise that to emphasize the point       and assume that it's true. It's not rational to take a singular policy, a 1960 auto policy, which the judge hadn't even seen, and assume that it's true. And I think that those terms apply to subsequent years when there's any variety of auto policies potentially issued, some without liability coverage even. Thank you. Thank you. On behalf of the entire court, we'd like to thank the parties for their briefing on this obviously interesting question and somewhat complicated. So we'll take the majority of the time. Thank you.